No. 19,066.

G. V. STAMEY (THOMAS M. LILLARD, as Trustee, etc., Substituted for G. V. STAMEY, a Convict), v. THE ROYAL EXCHANGE ASSURANCE COMPANY and the CONCORDIA FIRE INSURANCE COMPANY, *Appellants;* THE UNITED STATES CARRIAGE COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

INSURANCE—*Effect of Mortgage Clause—Independent Contract for Benefit of Mortgagee.* S., a liveryman, bought of a carriage company two hacks and paid only a small portion of the purchase price; to secure the payment of the remainder he executed promissory notes to the company and secured the same by a chattel mortgage on the hacks, and as additional security, in his own name a fire insurance policy with a mortgage clause attached, "Loss, if any, is first payable to the United States Carriage Company as their interest may appear." The policy also contained the provision that "if, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended hereto." No statement whatever of the provisions or conditions of insurance were written upon, attached or appended to the policy except the mortgage clause, which was in these words: "It is understood that the two hacks insured under the first item is being sold to the assured under a contract issued by the United States Carriage Company, and loss, if any, is first payable to the United States Carriage Company as their interest may appear." The policy was issued and the mortgage clause attached at the time the contract of sale and purchase was made. *Held,* that the provision of the mortgage clause was an independent contract between the insurance company and the mortgagee, and, as no other provisions were written upon or attached to the policy, all other conditions or qualifications of the policy were waived by the insurance company, including all acts which might thereafter be done by the purchaser of the hacks affecting the insurance so far as his interest was concerned; and,

further, *held*, that, as the value of the hacks exceed the amount remaining unpaid upon the mortgage, the carriage company is entitled to recover from the insurance company the unpaid balance of its mortgage lien on the property.

Appeal from Shawnee district court, division No. 1; ALSTON W. DANA, judge. Opinion filed January 9, 1915. Affirmed.

*Eugene S. Quinton,* of Topeka, for the appellants.
*James A. Troutman,* of Topeka, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This action was brought by G. V. Stamey against the Royal Assurance Company and the Concordia Fire Insurance Company to recover upon two policies of fire insurance issued upon the same property by the respective companies. The United States Carriage Company was also made a defendant, and answered setting up an affirmative claim under the insurance policies. Stamey, after the beginning of the action, was sentenced to the penitentiary for burning the insured property, and while he was a convict therein Thomas M. Lillard was duly named as trustee in the action to prosecute in his behalf, and an amended petition was filed in Lillard's name as trustee. The issues between the trustee and the insurance companies were tried to a jury, which returned a verdict in favor of each of the defendants, and made a special finding that Stamey burned the property covered by the policies for the purpose of securing the insurance. A judgment was rendered in accordance with the verdict. The claim of the United States Carriage Company against the insurance companies was submitted to the court, without a jury, upon the pleadings and judgment in the Stamey case. After some cavil as to the stipulation or agreement the court stated their agreement as follows:

"That these gentlemen here stipulate that as to the

carriages—that upon the admitted fact in the record, they stipulate and agree that if as a matter of law the court finds that the carriage company is entitled to a judgment against the insurance company the court shall so render judgment for the amount of the carriage company's claim."

To which the attorneys all assented.

It was understood that whatever judgment might be rendered for or against either insurance company the same judgment should be rendered for or against the other. For that reason, apparently, the court in its findings mentioned only the Concordia Fire Insurance Company, or the insurance company as applying to both insurance companies, and found that the insurance company had issued to Stamey a policy of insurance upon personal property, including two double hacks, with the limited liability of not more than $400 upon each hack; that the hacks were bought by Stamey from the United States Carriage Company, and that the value of each when destroyed was more than the amount of the insurance thereon, and that the unpaid balance of the purchase price at the time of the trial amounted to $1256.10, for which notes bearing six per cent per annum were given, secured by chattel mortgage on the hacks, and the mortgage clause attached to the policy; that the two hacks and other property covered by the policy of insurance were totally destroyed by fire at the place designated in the policies as the place where they were to be kept; that to each policy was attached the following:

"No. 7. It is understood that the two hacks insured under the first item, is being sold to the assured under a contract issued by the United States Carriage Company, and loss, if any, payable to the United States Carriage Company, as their interests may appear."

That in the body of each policy was the following stipulation and provision:

"No. 8. If, with the consent of this company, an interest under this policy shall exist in favor of a mort-

gagee, or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as herein described, the conditions hereinbefore contained shall apply in the manner expressed in such provision and conditions of the insurance relating to such interest as shall be written upon, attached, or appended thereto.

"No. 9. That the foregoing provision and stipulation and no part thereof nor any reference thereto, was written upon, attached to, or appended to the mortgage clause attached to said policy.

"No. 12. That said defendant Carriage Company set up its claim for the balance due upon said promissory notes and chattel mortgage and claimed that under the provisions and stipulations of said Insurance Company, an independent contract was entered into by and between said insurance company and said carriage company and that it was entitled to recover regardless of any act upon the part of said Stamey."

The court also made the following findings:

"No. 13. That thereafter proofs of loss were duly furnished said company including proof of the loss of said hacks and the defendant insurance company refused to pay said loss or recognize its liability therefor.

"No. 14. That the unpaid balance due said defendant carriage company at the date of these findings, claimed from said defendant insurance company by said carriage company, to-wit, December 28th, 1912, was $628.05.

"No. 18. That the said defendant carriage company's place of business is Columbus, Ohio, and that after the sale of said hacks it left them in the possession and control of said Stamey.

"No. 19. That several days prior to said fire, the local agency of said defendant insurance company became suspicious that the said Stamey contemplated burning said property and hired an officer to watch and guard said property and to catch the criminal.

"No. 20. That said watchman was on duty day and night for about one week with instructions from said local agency to apprehend the criminal if the property should be burned.

"No. 21. That said defendant carriage company had no knowledge and no means of knowing of the extra hazard surrounding the hacks included in its chattel

mortgage, and said insurance company and its local agency did not notify said carriage company of such extra hazard or communicate in any way with said company advising it of the existing suspicion."

As a conclusion of law the court found: (No. 1) That the stipulation in the insurance policies constitute an independent contract by and between the insurance company and the carriage company, and the right of recovery is not defeated or vacated in any way by the criminal act of Stamey's in causing the said property to be burned; (Nos. 2, 3) that the carriage company was entitled to recover of each of the fire insurance companies $628.05, with interest at 6 per cent from the date of the findings. Judgment was rendered accordingly. Motions for a new trial were made and overruled.

The appellant insurance companies contend that there was no loss contemplated by the contracts of insurance in the burning of the two hacks. It was established by the verdict in the case upon the trial of the issues, as between Stamey and the insurance companies, that Stamey was not entitled to recover any loss or damage under the policies so far as concerned his interest in the property insured, for the reason that he, himself, burned the property. We have no doubt that the decision was correct, and, of course, it would be equally applicable to the hacks involved in this case if he owned the hacks exclusively and the United States Carriage Company had no interest therein, and the contract was made exclusively for Stamey's benefit. Stamey unquestionably had the legal title to the hacks also, but the carriage company, which had contracted to sell them to Stamey, had a chattel mortgage thereon for a large portion of the purchase price thereof. That the carriage company's interest in the hacks was an insurable interest is well settled and is not questioned.

The principal contention of the appellants, however, and the real issue in this case, is whether the court erred

in conclusions of law Nos. 1 and 2, *ante*. There is some conflict in the authorities as to the effect of attaching to a policy of insurance a stipulation or mortgage clause, which is known as the standard clause, viz.: "Loss, if any, payable to.......... mortgagee, as his interest may appear." The case of *Bank v. Insurance Co.*, 6 Kan. App. 219, 49 Pac. 688, is cited in support of appellants' contention that such insurance is for the benefit of the owner of the property only and not for the benefit of the mortgagee. Some language was used in the opinion which justifies the claim of appellants, but in that case the property owner had forfeited his right to recover under the policy according to its very terms by taking out additional insurance without notice to or consent of the insurance company issuing the policy sued on. Another defense was that the property was mortgaged at the time the insurance policy was obtained and no notice thereof was given. Also, that the plaintiff permitted foreclosure proceedings on the property without the knowledge or consent of the company. So it appears that the effect of attaching the standard clause of loss order was not the only question involved therein, and it does not appear that the case was decided entirely upon that question.

The appellee, on the other hand, cites numerous authorities in support of its contention that the standard loss order clause, like the one in this case, constitutes an insurance of the interest of the mortgagee and his interest can not be affected by any act or conduct on the part of the owner. Among the Kansas cases cited is *Dodge v. Hamburg-Bremen Fire Ins. Co.*, 4 Kan. App. 415, 46 Pac. 25, which is squarely in point and decides that the loss, if any, is payable to the owner of the mortgage or his assigns as his interest may appear. The owner of the mortgage is the insured to the extent of his interest. The appellee also cites *Insurance Co. v. Coverdale*, 48 Kan. 446, 29 Pac. 682, and *Insurance Co. v. Boardman*, 58 Kan. 339, 49 Pac. 92.

In the two latter cases, however, the clause expressly provides that the insurance as to the mortgagee shall not be invalidated by any act or neglect of the owner, and this constitutes what is known as the "union clause" as distinguished from the standard clause before considered.

Appellee also cites *Reed v. Firemen's Ins. Co.*, 81 N. J. Law, 523, 80 Atl. 462, 35 L. R. A., n. s., 343, in which it was said:

"The standard mortgagee clause creates an independent contract of insurance for the separate benefit of the mortgagee, ingrafted upon the main contract of insurance contained in the policy itself, and to be rendered certain and understood by reference to the policy.

"A policy of fire insurance in the standard form, which is void as to the assured owner, because of his breach of the warranty that his interest is not other than unconditional and sole ownership, may nevertheless be valid as to a mortgagee, when the mortgagee clause in the usual form is attached to the policy." (Syl. ¶¶ 1, 2. )

Appellee also cites *Welsh v. Assurance Co.*, 148 Cal. 223, 82 Pac. 964, 7 Ann. Cas. 396.

The trial court also found that the insurance companies, through their agent, were informed of the intention of Stamey to burn the property and employed a guard to watch the property and apprehend Stamey if he made such attempt, and such guard and watch was kept night and day a week before the property was burned, but neither was any notice given to the carriage company nor were the insurance policies, or either of them, canceled.

The conclusion of law is sustained by ample authorities, and the judgment is affirmed.