No. 35,200

GEORGE R. ELMORE, doing business as THE ELMORE MOTOR COMPANY, *Appellant,* v. THE ROYAL INSURANCE COMPANY, LTD., *Appellee.*

(114 P. 2d 786)

Opinion filed July 5, 1941.

*Al F. Williams,* of Topeka, *Don H. Elleman* and *Paul H. Elleman,* both of Columbus, for the appellant.

*Marc Boss* and *Fred A. Walker,* both of Columbus, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action by the holder of a mortgage on an autmobile to recover from the defendant insurance company the unpaid balance of its mortgage lien on the automobile less the value of the automobile after a collision. The action was based upon an automobile collision policy written by the defendant, The Royal Insurance Company, Ltd. Defendant prevailed, and plaintiff appeals.

The action was tried to the court upon an agreed statement of facts which was in substance as follows: On August 19, 1937, plain-

tiff sold to Clyde Millard Flowers a certain Pontiac sedan automobile for the sum of $627.30. A down payment of $150 left a balance due in the sum of $477.30, which amount remains due and payable, with interest, from August 19, 1937. On the date of sale defendant executed and delivered its insurance policy to the mortgagor (terms of policy will be noted presently). On August 22, 1937, the automobile was involved in a collision while driven by Flowers and was practically demolished. Prior to the collision the automobile was worth more than $477.30. After the collision its reasonable value was $50, and plaintiff suffered a loss in the sum of $427.30. Plaintiff, on August 23, 1937, notified defendant, through its duly authorized agent, of the fact the collision had taken place and concerning all facts in connection therewith and that plaintiff had been damaged by reason of the collision in the sum of $427.30. The collision occurred when an automobile driven by Dora Robertson ran into Flowers' automobile. Dora Robertson carried a policy of insurance with the State Farm Mutual Automobile Insurance Company, which, among other things, indemnified her against loss or damage she might cause to the person or property of others. By reason of the manner in which the collision occurred Flowers claimed to have a cause of action against Dora Robertson for damages resulting from her negligence, which was the proximate cause of the collision. On August 26, 1937, four days after the collision, Flowers, for the consideration of $100, paid to him by Dora Robertson and her insurance carrier, executed and delivered to Dora Robertson and her insurance carrier a full and complete release from all further liability of every kind and character which had resulted or might in the future develop by reason of the collision. Neither plaintiff nor defendant had any knowledge of the $100 payment and settlement until September 27, 1937. Plaintiff at no time consented to the acceptance by Flowers of said payment or to the execution and delivery of the release and it received no portion of the payment made to Flowers. Within sixty days from August 22, 1937, defendant denied all liability to plaintiff.

The stipulation contained also the following provision:

"That said defendant at the time of denying all liability as aforesaid, stated to said plaintiff that the only grounds and reason for so doing was that said insurance policy aforesaid contained, among other things, the following provision:

"Subrogation. 'This company may require from the insured an assignment of all right of recovery against any party for loss or damage to the extent that

payment therefor is made by this company,' and that by reason of the payment of said sum aforesaid to said Clyde Millard Flowers by said Dora Robertson and said State Farm Mutual Automobile Insurance Company and the signing, execution and delivery of said exhibit 'A' by said Clyde Millard Flowers to said Dora Robertson and said State Farm Mutual Automobile Insurance Company, that the provisions of said policy had been violated and that by reason of such violation the defendant was not liable to plaintiff in any sum whatever.

"It is further stipulated and agreed by and between the parties hereto that the sole and only question to be determined in this action is as to whether or not the payment by said Dora Robertson and said State Farm Mutual Automobile Insurance Company of said sum of $100 to said Clyde Millard Flowers and the signing, execution and delivery of said instrument marked exhibit 'A' aforesaid to said Dora Robertson and said State Farm Mutual Automobile Insurance Company by said Clyde Millard Flowers after the date of the collision without the knowledge or consent of said plaintiff and without any affirmance of same having been made by said plaintiff and without plaintiff having received any portion of said payment, constitutes such a violation of the terms and provisions of said policy of insurance aforesaid as to relieve said defendant from all liability whatsoever to said plaintiff under the terms and provisions of said policy aforesaid."

Section B of the insurance contract contains the following:

"B.  Name of Insured   Clyde Millard Flowers   Address of Insured   325 West 11th Baxter Springs   Cherokee Kansas.

"Subject to all the provisions, exclusions, conditions and warrants contained in this policy, loss, if any, payable, as interest may appear, to insured and The Elmore Motor Company. Address   Columbus, Kansas. Term of Policy: From August 19th 1937 noon to August 19th 1938 noon."

Appellee also relies upon other provisions of the insurance policy. Those provisions, together with appellee's contentions, are set forth in its answer, which was as follows:

"Defendant further alleges that the said insurance policy sued upon herein contains the following provision:

" 'Subrogation. This company may require from the insured an assignment of all right of recovery against any party for loss or damage to the extent that payment therefor is made by this company.'

"Defendant alleges further that by the action of said insured, Clyde Millard Flowers, in releasing said Dora Robertson and her said liability insurance carrier, and all other persons, firms or corporations, from any liability on account of said collision, as aforesaid, the said insured, Clyde Millard Flowers, thereby violated the provisions aforesaid contained in his said policy and put it beyond his power to comply with the same and with the terms and requirements of his said policy issued by this defendant and the said defendant is not liable to the said Clyde Millard Flowers under said policy. And defendant alleges further that by reason of the provisions and conditions contained in said policy, and particularly the provision that 'Subject to all the provisions, exclu-

sions, conditions and warrants contained in this policy, loss, if any, payable, as interest may appear, to insured and The Elmore Motor Company,' and the further provision in said policy that 'No suit or action on this policy or for the recovery of any claim hereunder shall be sustainable in any court of law or equity unless the insured shall have fully complied with all the foregoing requirements . . .,' and the further provision in said policy that 'This policy shall be void in event of violation by the insured of any agreement, condition or warranty contained herein or in any rider now or hereafter attached hereto,' this defendant is not liable to plaintiff herein in any sum whatever. Defendant alleges further that in the event that it should be held that this defendant is liable herein, then said defendant claims that its liability should be reduced to the extent of $100 paid to said Clyde Millard Flowers by the said Dora Robertson and her said liability insurance carrier, as heretofore alleged."

Briefly, appellee's position is that the rights of the mortgagee, under the instant policy, depend upon the rights of the mortgagor. It contends the mortgagor forfeited his rights when he violated and voided the policy by settling with the wrongdoer. It contends, the policy being void, the mortgagee cannot recover on it. In support of that contention it relies upon *Burns v. Insurance Co.*, 103 Kan. 803, 176 Pac. 985; *Motor Co. v. Indemnity Co.*, 116 Kan. 109, 225 Pac. 1056; *Hole v. Nat'l Fire Ins. Co.*, 122 Kan. 328, 252 Pac. 263; *Deruy Motor Co. v. Insurance Co.*, 146 Kan. 233, 69 P. 2d 677, and annotations 38 A. L. R. 367 and 124 A. L. R. 1034. Appellee emphasizes the distinction made by courts between the effect of a simple "loss-payable" or "open" mortgage clause, such as the instant one and the more recent method of protecting mortgagees by attaching riders to the mortgagor's policies which are generally known as "standard" or "union" mortgage clauses and which among other things provide that "the insurance, as to the interest of the mortgagee, shall not be invalidated by any act or neglect of the mortgagor or owner." Appellee insists the overwhelming weight of authority sustains the proposition that under the simple "loss-payable" or "open" clause, if there is no other stipulation in regard to the interest of the mortgagee, the contract as to the mortgagee is merely collateral to the principal undertaking to pay the mortgagor, and that the mortgagee is simply an appointee of the fund. (*Motor Co. v. Indemnity Co.*, supra; Annotation 38 A. L. R. 367; Annotation 124 A. L. R. 1034; *Deruy Motor Co. v. Insurance Co.*, supra, p. 235.)

Appellant, mortgagee, concedes the general rule to be as stated by appellee, but contends an exception thereto has been recognized where the acts of the mortgagor, which constitute a forfeiture of his rights, are committed after the loss has occurred. In other words,

appellant asserts its rights as a mortgagee vested under the simple "loss-payable" clause when the loss occurred, at which time the policy was in full force and effect, and that thereafter it could not be divested of its rights by the acts of the mortgagor. Appellant contends the precise question here presented was not ruled in the Kansas cases relied upon by appellee and that the exception to the general rule has been recognized. (See 5 Couch on Insurance, § 1215a, p. 4434; 29 Am. Jur., Insurance, § 552, p. 447; 38 A. L. R. 367, 379, 383.) It is unnecessary to review the various cases already exhaustively analyzed by the annotators. That a distinction as to the rights of a mortgagee under a simple "loss-payable" or "open" mortgage clause has been recognized by some courts where the mortgagor's acts of forfeiture are committed *after the loss has occurred*, seems clear. The precise question touching the exception to the general rule, contended for by appellant, does not appear to have been expressly ruled by our previous decisions. The effect of a contract containing the same or similar provisions as the instant insurance contract has, however, been definitely determined by this court.

This is not a suit in equity but an action at law to recover money under the terms of a contract. The contract fixes the rights of the parties. They have such rights as the contract gives them and no others. The mortgagee was not a party to the instant contract but was merely an appointee to receive the proceeds of the policy to the extent of its interest. (*Motor Co. v. Indemnity Co.*, 116 Kan. 109, 225 Pac. 1056.) In the Deruy Motor Company case, 146 Kan. 233, 69 P. 2d 677, the insurance contract, as the instant contract, provided for payment to the insured and the mortgagee. If the fact that both the owner of the automobile and the mortgagee were named in the policy made the mortgagee a party to the contract, then the mortgagee is of course bound by the terms of the policy. (*Deruy Motor Co. v. Insurance Co.*, supra, pp. 235, 237.) The rights of the mortgagee depended upon the rights of the mortgagor. (*Motor Co. v. Indemnity Co.*, supra; *Deruy Motor Co. v. Insurance Co.*, supra, p. 235.) The mortgagee was bound by the provisions of the contract which bound the mortgagor. (*Burns v. Insurance Co.*, 103 Kan. 803, 805, 176 Pac. 985; *Hole v. Nat'l Fire Ins. Co.*, 122 Kan. 328, 331, 252 Pac. 263; *Deruy Motor Co. v. Insurance Co.*, supra, p. 237.) The forfeiture provision in the policy is applicable to the mortgagee, and whatever forfeits as to the owner forfeits as

to the mortgagee. (*Burns v. Insurance Co.*, supra, p. 805; *Hole v. Nat'l Fire Ins. Co.*, supra, p. 331.) The forfeiture of the terms of the contract by the mortgagor precludes recovery by the mortgagee. (*Burns v. Insurance Co.*, supra, p. 805; *Hole v. Nat'l Fire Ins. Co.*, supra, p. 331.) The mortgagee had no rights independent of the mortgagor under the simple "loss-payable" or "open" clause. (*Burns v. Insurance Co.*, supra, p. 805; *Motor Co. v. Indemnity Co.*, supra, p. 111; *Deruy Motor Co. v. Insurance Co.*, supra, p. 237.)

The instant contract specifically made the rights of the mortgagee subject or collateral to the rights of the mortgagor and did not create any independent rights in the mortgagee. This clearly appears from pertinent provisions of the contract. One provision reads:

"Subject to all the provisions, exclusions, conditions and warranties contained in the policy, loss, if any, payable, as interest may appear, to insured and The Elmore Motor Company."

Touching that exact provision, this court in *Burns v. Insurance Co.*, supra, said:

"The question to be here determined is whether the incorporating in the loss-payable clause of the words, 'subject, however, to all the terms and conditions of this policy,' amounts to an endorsement or attachment of such terms and conditions, thereby making them applicable to the *mortgagee* as well as to the mortgagor. *The very purpose of the language seems to be to make it clear that the mortgagee was not to be released from the restrictions laid upon the insured.* We interpret it as adopting by reference all the provisions of the policy, and giving them the same force as though they had been again set out at length, *thereby making them applicable to the mortgagee, and preventing any exception or immunity in his favor."* (p. 805.) (Emphasis supplied.)

The above interpretation has been adhered to consistently as is disclosed by our later cases previously cited.

The insurance contract further expressly provided:

"This policy shall be void in event of violation *by the insured* of any agreement, condition or warranty contained herein or in any rider now or hereafter attached hereto." (Emphasis supplied.)

It will be observed the above clause makes no exception as to the time when the assured may violate the terms of the insurance contract.

The insurance contract further provided: "No suit or action on this policy or for the recovery of any claim hereunder shall be sustainable in any court of law or equity unless the insured shall have fully complied with all the foregoing requirements."

The subrogation clause reads:

*"Subrogation.* This company may require from the insured an assignment of all right of recovery against any party for loss or damage to the extent that payment therefor is made by this company."

The insured gave the insurer no notice of a contemplated settlement with the wrongdoer. Within four days after the loss the insured settled with the wrongdoer without notice to his insurer. Had the insurer been advised of such contemplated settlement it could have, under the subrogation clause, protected itself, the insured and the mortgagee by taking an assignment of the mortgagor's rights against the wrongdoer. It is true the mortgagee, on the day following the collision, advised the insurer of all the facts pertaining to the collision. These facts, as indicated by the stipulation, clearly tended to disclose its insured was not at fault. Under such circumstances, we are not willing to say the insurer was precluded from its subrogation rights merely because it did not obtain an assignment from its insured within four days.

Appellant insists its rights vested at the time of the loss. It is true that such rights as it had did vest at that time. But what were those rights under the simple "loss-payable" or "open" clause as determined by the previous and repeated decisions of this court? They were only the rights previously indicated in the instant opinion. They were not independent rights, but rights collateral to those of the mortgagor, which the mortgagor, under the plain terms of the contract, could forfeit. (*Longfellow v. Insurance Co.,* 102 Kan. 473, 474, 170 Pac. 813; *Burns v. Insurance Co.,* 103 Kan. 803, 805, 176 Pac. 985; *Motor Co. v. Indemnity Co.,* 116 Kan. 109, 111-115, 225 Pac. 1056; *Deruy Motor Co. v. Insurance Co.,* 146 Kan. 233, 235, 69 P. 2d 677.) The mortgagor did forfeit them. The policy might have, and for the proper protection of the mortgagee should have, contained a "standard" or "union" mortgage clause such as is now frequently attached to policies and which in substance provides that "the insurance, as to the interest of the mortgagee, shall not be invalidated by any act or neglect of the mortgagor or owner." This policy had no such provision or rider and we cannot substitute the "standard" or "union" rider for the simple "loss-payable" or "open" clause and thereby create a different contract for the parties.

The instant contract contains no exception which provides that the insurer shall be liable to the mortgagee if the mortgagor commits an act of forfeiture *after the loss occurs.* In order for appellant

to prevail we must read such an exception into the contract. This courts are not permitted to do. Furthermore, we cannot well escape the conclusion that, while we have not specifically ruled upon the question of the particular exception to the general rule now contended for by appellant, we have definitely said that an identical clause, which made the rights of the mortgagee subject to the acts of the mortgagor, prevented *any exception or immunity in favor of the mortgagee.* (*Burns v. Insurance Co.,* supra.) Our former decisions are in harmony with the overwhelming weight of authority touching insurance contracts containing the provisions embraced in the instant contract. (See annotations referred to above.)

Moreover, there could be no violation by the mortgagor of the subrogation provision, as applied to the instant case, until the loss occurred. There is therefore no basis for the adoption of an exception to the general rule in the instant case on the theory the forfeiture took place after the loss occurred. To say, under such circumstances, that the insurer is liable to appellant because the mortgagor forfeited the policy after the loss occurred, renders the subrogation clause and other pertinent provisions of the contract meaningless in the instant case.

Where the *insurer* and insured together, without the mortgagee's knowledge or consent, settle a loss and thereby deprive the mortgagee of his right to collect, as his interest may appear, an entirely different situation is presented. (38 A. L. R. 383.) In such a case the *insurer* has no basis for complaint. Simple and ordinary fairness precludes an insurer from arbitrarily disposing of a mortgagee's interest in that fashion. But that is not this case. In the Deruy Motor Company case, *supra,* we sustained the settlement of the loss by the insurer and the insured alone, and held against the mortgagee solely for the reason the policy expressly provided the loss might be settled by them alone and the mortgagee claimed it was a party to the contract.

The judgment of the trial court was correct and should be affirmed. It is so ordered.

HARVEY and SMITH, JJ., dissent.