No. 30,330.

ARTHUR E. McDOWELL and ADIE McDOWELL, *Appellants*, v. (ADAM E. GEIST) THE SHELLABARGER MILL AND ELEVATOR COMPANY and BEN REUSCHOFF, *Appellees.*

(8 P. 2d 372.)

Opinion filed
March 5, 1932.

*W. L. Sayers,* of Hill City, for the appellants.

*C. A. Spencer* and *J. H. Jenson,* both of Oakley, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action for the alleged conversion of wheat of the value of $1,625.47. The trial court sustained a demurrer to plaintiffs' petition, and they have appealed. The question before us is whether the petition states a cause of action.

Plaintiffs, who were the owners of 560 acres of land in Gove county, on September 18, 1926, entered into a written contract to sell it to Adam E. Geist, on what is spoken of as the "crop payment plan," for the sum of $18,200. By the terms of this contract Geist agreed to buy the land for the sum stated and to pay therefor as follows: "All of the proceeds of one-half of all grain crops . . . raised on said land . . . until the full sum, . . . with interest thereon is fully paid. The said one-half of all grain crops shall be delivered to an elevator in Grinnell, Kansas, . . . and sold in the name of said first parties" and the proceeds applied to the payment of interest and principal on the contract of purchase. The contract was to be held by the Grinnell State Bank and all payments were to be made there and credit given by the bank on the contract. If full payment were not made in ten years the balance then unpaid should be due. Geist was to have possession of the land and pay the taxes on it.

The contract further provided that all small grains should be threshed and marketed by November first of each year and the corn husked and marketed by January first. Geist agreed to keep the interest of the first parties in all grain insured against hail for their benefit, any sum collected on the policies to be credited on the contract. He was to give plaintiffs five days' notice of the time of threshing, so that they, or some one for them, might be present, if they desired, and within ten days after threshing was to

furnish a thresherman's certificate showing the number of bushels threshed.

The contract provided that if Geist made default, or failed to keep the covenants and agreements therein, plaintiffs would be entitled to the immediate possession of the premises, and payments or improvements should be retained as a reasonable rental of the premises. It provided that upon compliance with the terms of the contract by Geist plaintiffs would convey the property to him by warranty deed, but if Geist failed to pay taxes or other assessments, or failed otherwise to comply with the agreement, plaintiffs would not be bound to comply with their part of it and should have the right to terminate the contract, in which event Geist was to give immediate and peaceable possession of the premises.

A copy of the contract was attached to the petition, which alleged that the same had been recorded in the office of the register of deeds. It was also alleged that prior to July, 1930, Geist had made payments upon the contract, leaving a balance due at that time of more than $17,500; that in 1930 Geist raised and harvested from the land more than 5,500 bushels of wheat and sold to the defendant elevator company, of which the defendant, Ben Reuschoff, was manager, 5,150 bushels and 10 pounds of the wheat for the sum of $3,250.94. Plaintiffs alleged that the elevator company and its manager had notice and knowledge of the provisions of the contract between plaintiffs and Geist; that plaintiffs did not know the wheat had been delivered to the elevator until about the first of November, 1930, at which time they demanded of the elevator company and its manager the payment of the sum of $1,625.47, being one-half the value of the wheat. Payment being refused, this action was brought.

The petition alleges, as a conclusion, that by virtue of the provisions of the contract between plaintiffs and Geist plaintiffs were the owners of one-half of the grain grown on the premises. This position is untenable, and in fact has been abandoned in this court. It was essential to plaintiffs' action that they show title to the wheat in question, or a lien thereon, or right to possession thereof, and they must recover on the strength of their own title rather than on the weakness of that of their adversary. (26 R. C. L. 1131; *Van Zandt v. Shuyler*, 2 Kan. App. 118.)

The relations created between plaintiffs and Geist by the terms

of the written contract, so far as the real property was concerned, were that of vendor and vendee. There is no provision in it by which the plaintiffs were to become the owners of the grain grown on the premises, nor does it provide that plaintiffs shall have a lien upon the grain, or possession of it. By the terms of the contract Geist was to harvest and thresh the grain and deliver it to market, sell it, and apply one-half of the proceeds upon the contract, and in that way pay this amount to plaintiffs. The contract itself was to be kept at the bank, at which place Geist was to make the payments. It is true the contract provided Geist should give the plaintiffs notice of when he was to thresh, and was later to furnish them the thresherman's certificate of the amounts threshed, and was to sell one-half of the grain in the name of plaintiffs, and was to pay the bank one-half of the proceeds of the grain upon the contract to plaintiffs. We note, in passing, that the petition does not allege the failure of Geist to do any of these things. For all the petition discloses, plaintiffs may have received one-half of the proceeds of the wheat. We note, also, that the contract provided its own remedy in the event of the failure of Geist to perform the covenants or conditions of the contract. That remedy was the termination of the contract, the surrender of possession of the premises to plaintiffs, and the retention by plaintiffs of payments previously made and of improvements Geist may have placed on the premises. The elevator company and its manager were not parties to the contract, and had no duties to perform respecting it. By the terms of the contract Geist was the owner of the wheat and authorized to sell it, and he apparently took it to the elevator, the manager of which bought it. If Geist failed in any respect to perform the contract with plaintiffs their remedy was provided in the contract itself.

In this court appellants, in effect, abandon the theory that by the terms of the contract between them and Geist they became the owners of one-half of the grain grown on the premises and say they are not very much concerned with the question of the nature of plaintiffs' exact interest in the crops; that it does not matter whether plaintiffs owned the title to a half interest, or whether they had the right to have the crops sold in their name, for their benefit, as owners of the contract, or whether plaintiffs merely owned an interest in the proceeds of the crop, and argue that, in any event, plaintiffs had a valuable property right of some kind which the defendants,

the elevator company and its manager, invaded. It is true that a petition need only state facts constituting plaintiffs' cause of action. It is not essential that it be given a common-law name of a cause of action. But it is essential that it be framed on a definite theory. Confusion of theories is not permitted. (*Grentner v. Fehrenschield*, 64 Kan. 764, 68 Pac. 619.) Here, as we have seen, the plaintiffs drew their petition on a definite theory, but that being untenable, now argue upon a confusion of theories, which is insufficient.

The result is, the judgment of the court below must be affirmed, and it is so ordered.